UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARGARET MASCORRO, ) | No. EDCV 05-932 FFM |
| ) Plaintiff, ) | MEMORANDUM OPINION; ORDER THEREON |
| v. ) | |
| JO ANNE B. BARNHART, ) Commissioner of Social Security, ) | |
| ) Defendant. ) | |
| _____ ) | |

Plaintiff filed a complaint on October 5, 2005, seeking review of the Commissioner's denial of her application for supplemental security income benefits. In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation on July 17, 2006. Thus, this matter is now ready for decision.

This memorandum opinion shall constitute the Court's findings of fact and conclusions of law.

**PROCEDURAL HISTORY**

Plaintiff, who was thirty-eight years old as of the date of decision, has a tenth grade education and no past relevant work. (AR 30; see AR 76, 83, 88). She protectively filed her current application[1] for benefits on February 15, 2002, alleging inability to work since

---

[1] Denial of previous applications filed in 1995 and 1999 are final and binding on this application. (AR 29; see AR 51-58).

May 1, 1995, due to chronic hepatitis C.  (AR 75, 76-80, 82).  She stated that she is always tired, that she suffers from dizziness and headaches, and that she has mental problems.  (AR 82).  Her application was denied initially and upon reconsideration and, at her request, a hearing was held on April 2, 2003, before an Administrative Law Judge ("ALJ").  (AR 456-65).  On September 25, 2003, the ALJ issued his decision again denying benefits, relying upon the Medical Vocational Guidelines in Appendix 2, Subpart P, 20 C.F.R. Part 404 ("the Grids") as a framework for decision-making in concluding that there was substantial gainful work which Plaintiff could perform.  (AR 29-36).

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as the grounds for reversal and or remand are as follows:

1) Whether the ALJ properly considered the opinion of the treating physician, Dr. Robert Evans, "regarding the Plaintiff's functional status." (Joint Stipulation ("JS") 2);

2) Whether the Appeals Council properly considered the updated opinion of disability of treating psychiatrist, Dr. Inderjit Seehrai;

3) Whether the ALJ properly considered the opinion of consultative psychiatrist, Dr. Divy Kikani;

4) Whether the ALJ properly considered the lay witness testimony of Ronald Borrego;

5) Whether the ALJ properly considered the State agency's rating of plaintiff's functional limitations; and

6) Whether the ALJ should have obtained vocational expert testimony concerning Plaintiff's non-exertional impairments.

/ / /
/ / /

This Court finds that the matter must be remanded to the Commissioner for further proceedings because the ALJ failed to properly consider the opinion of Dr. Kikani and the statement of the lay witness.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

**The ALJ's assessment of the opinion of Dr. Robert Evans (Issue No. 1)**

The opinion of a treating physician is generally entitled to special weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, a treating physician's opinion may be rejected by the ALJ in favor of the opinion of a non-treating physician if the ALJ cites specific and legitimate reasons for doing so. Even if uncontradicted, the treating physician's opinion may be rejected if the ALJ gives reasons that are clear and convincing. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

/ / /

Here, the ALJ rejected Dr. Evans' opinions indicating that Plaintiff was incapacitated from work (AR 168-72, 224) by citing specific, clear and convincing reasons. First, the ALJ noted that such opinions of incapacity are not medical opinions but rather opinions on issues reserved to the Commissioner. (AR 34). 20 C.F.R. § 416.927(e). He also noted that despite Dr. Evans' conclusions of disability, when asked to make an assessment of Plaintiff's functional capabilities, he was unable to do so. (AR 34; AR 223). In addition, the ALJ noted that the medical records showed little change in circumstances since the prior decision finding that plaintiff was able to perform work at the light exertional level. (AR33). Thus, conclusions of incapacity notwithstanding, Dr. Evans was unable to show how Plaintiff's symptoms "translate into specific functional deficits which preclude work activity." *Morgan v. Commissioner of Social Security Administration*, 169 F.3d 595, 601 (9th Cir. 1999). There was, therefore, no error in the ALJ's evaluation of Dr. Evans' conclusory opinions that Plaintiff was incapacitated.

**The Appeals Council's evaluation of the updated opinion of disability of Dr. Inderjit Seehrai (Issue No. 2)**

On March 26, 2003, Dr. Seehrai completed a questionnaire indicating that Plaintiff was incapacitated from work. (AR 244). This questionnaire was submitted to the Appeals Council, which indicated that it had reviewed the evidence but found that the information did "not provide a basis for changing the Administrative Law Judge's decision." (AR 4-5, 7). Plaintiff contends that it was error for the Appeals Council to reject this opinion without citing specific and legitimate reasons for doing so. However, this questionnaire is virtually identical in form and substance to others completed by Dr. Seehrai which were part of the record before the ALJ. (AR 165, 223). This more recent evidence, therefore, is merely cumulative and not new and material evidence which required any further explanation from the Appeals Council. 20 C.F.R. § 416.1470; *see Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).

///

**The ALJ's evaluation of the psychiatric evidence (Issue Nos. 3 and 5)**

The record contains psychiatric medical opinions from Plaintiff's treating physician, Dr. Seehrai, the consultative examiner, Dr. Divy Kikani, and the State agency psychiatrist. The ALJ rejected Dr. Seehrai's medical source statement concerning Plaintiff's limitations, and Plaintiff does not argue that the ALJ's rejection was improper. (AR 34; JS 10). Rather, Plaintiff contends that the ALJ failed to properly consider the State agency opinion and the opinion of Dr. Kikani.

<u>The ALJ's evaluation of the report of Dr. Kikani (Issue No. 3)</u>

Just as the ALJ must cite specific and legitimate reasons for rejecting the opinion of a treating physician in favor of that of a non-treating physician, he must cite specific and legitimate reasons for rejecting the opinion of an examining physician in favor of the opinion of a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

The ALJ summarized Dr. Kikani's report and findings and Dr. Kikani's opinion that Plaintiff "had a moderate impairment in activities of daily living and social functioning. She was able to understand, remember, and carry out simple instructions but was moderately impaired in her ability to respond appropriately to coworkers, supervisors, and the public and to work pressures and changes in a routine work setting." (AR 32; AR 242).

Although Dr. Kikani, like Dr. Seehrai and the State agency physician, did not indicate that Plaintiff was unable to perform simple, repetitive tasks (AR 205, 230, 241), he found other moderate limitations in addition to those cited by the ALJ. For example, Dr. Kikani also found that Plaintiff "may be expected to show" impairment in her ability to respond appropriately to the usual work situation, such as in attendance. (AR 240). This is consistent with Dr. Seehrai's opinion that Plaintiff had a marked limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (AR 230). Although Dr. Kikani assessed this limitation to be moderate versus the marked opined by Dr. Seehrai, nevertheless, even a moderate impairment in such a basic work function as maintaining regular attendance is

not an insignificant non-exertional impairment.

Dr. Kikani also assessed that Plaintiff "may be expected to show" the same moderate impairment in responding to work situations such as with safety. (*Id.*). Likewise, Dr. Seehrai opined that Plaintiff had a moderate impairment in her ability to be aware of normal hazards and take appropriate precautions and that she had a moderate impairment in responding appropriately to changes in the work setting. (AR 231).

Dr. Kikani also found that Plaintiff "may show moderate impairment in ability to persist at a normal work situation under customary work pressure. The patient may show moderate episodes of emotional deterioration at the normal work situation under customary work pressure." (AR 240). Dr. Seehrai opined that "stress at work might increase depression with loss of concentration and focus which might moderately impair workday." (AR 166).

Thus, the only two mental health professionals who have actually seen and examined Plaintiff are in substantial agreement that Plaintiff has, at the very least, a moderate impairment in several significant areas of work functioning and that Plaintiff might suffer a deterioration when subjected to normal work stress. While an individual moderate impairment may not preclude the performance of a work function or even significantly erode the occupational base, taken with other moderate impairments, and considering the potential synergistic effects of these limitations, the erosion of the occupational base might be significant. Nevertheless, there is no analysis or discussion whatsoever of Dr. Kikani's opinion concerning these other moderate limitations.

The ALJ need not separately analyze each and every sentence of a medical report which might qualify as a medical opinion. Similarly, the ALJ need not accept or reject an opinion in its entirety. *See Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'") (citation omitted). However, the ALJ may not simply ignore probative portions of the opinion without an explanation. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (although the

ALJ need not discuss every item of evidence, he must explain why significant probative evidence has been rejected). Here, the above-cited opinions of the examining physician, Dr. Kikani, are uncontradicted by any other physician other than the non-examining State agency physician whose opinions, without more, cannot constitute substantial evidence. *Andrews*, 53 F.3d at 1042. Accordingly, the matter requires remand for proper consideration of the opinions of Dr. Kikani.

<u>The State agency physician's opinion (Issue No. 5)</u>

20 C.F.R. § 416.927(f) provides that the ALJ must consider the opinions of the State agency physicians and explain in the decision the weight given to such opinions. It is clear that the ALJ did consider the State agency opinions and that he found that they were "supported by and consistent with the evidence of the entire record." (AR 33). The ALJ's failure to discuss each separate item of the Psychiatric Review Technique Form ("PRTF") completed by the State agency physician[2] and each item of the mental residual functional capacity assessment was not error because he was not required to do so.

**Lay witness testimony (Issue No. 4)**

Ronald Borrego, Plaintiff's boyfriend, completed a questionnaire on Plaintiff's behalf in which he indicated, inter alia, that Plaintiff tires easily and spends most of the time lying down and taking naps. (AR 97). Even a chore such as washing dishes requires her to "immediately" lie down and rest. (AR 101). Mr. Borrego also described mood swings, isolation, and forgetfulness. (*Id.*). Nowhere in his decision does the ALJ

---

[2]Plaintiff argues, inter alia, that the State agency physician's assessment on the PRTF that Plaintiff had moderate restrictions in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace (AR 199) should have been specifically addressed by the ALJ. (JS 15, 17). However, the ratings of the degree of limitation in the functional areas described in the PRTF are used to determine whether Plaintiff's psychiatric impairment is severe and, if severe, whether the impairment meets or equals a Listing. 20 C.F.R. § 416.920a(d). There is no issue as to either. (AR 30).

7

discuss Mr. Borrego's responses to the questionnaire. Plaintiff contends that this is reversible error. The Court agrees.

20 C.F.R. § 416.913(d) provides that the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to sworn hearing testimony of witnesses (see *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) as well as to unsworn statements and letters of friends and relatives (*see Schneider v. Commissioner of the Social Security Administration*, 223 F.3d 968, 974 (9th Cir. 2000)). If the ALJ chooses to reject such evidence from other sources, he may not do so without comment, *Nguyen*, 100 F.3d a 1467, and he must provide "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Clearly, the ALJ provided no such reasons, and the Commissioner's arguments that this failure was not reversible error are unavailing. First, the Commissioner contends that the ALJ's finding that Plaintiff herself was not entirely credible renders Mr. Borrego's statement cumulative. (JS 13). However, the mere fact that Plaintiff's testimony was properly discredited does not mean that the ALJ is relieved of his obligation to comment upon the lay witness testimony. To find otherwise would be based upon "the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." *Dodrill*, 12 F.3d at 919.

The Commissioner's argument, moreover, that the analysis in cases such as *Dodrill* and *Smolen v. Chater*, 80 F.3d 1273, 1288 (1996) may no longer be in effect is also unavailing. (JS 14). While it is true that the current regulation, 20 C.F.R. 416.913(d)(4), is "permissive" and not mandatory in that it only provides that the Commissioner "may" consider statements from non-medical sources, the corresponding regulation in effect at the time the *Dodrill* Court ruled is equally permissive, 20 C.F.R. 416.913(e)(1993)

("Information from other sources *may* also help us to understand how your impairment(s) affects your ability to work"), and recent cases such as *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053-57 (9th Cir. 2006) completely undermine the Commissioner's argument. *Stout* also addresses the Commissioner's last argument–that the ALJ's failure to address Mr. Borrego's statement was harmless error.[3] The Ninth Circuit in *Stout* held that "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056. Assuming the reliability of Mr. Borrego's statement, this Court cannot confidently conclude that no reasonable ALJ would have arrived at a different disability determination if an individual spent most of her time lying down and resting. Accordingly, remand is also required for proper evaluation of the statement of Mr. Borrego.

**Vocational expert testimony (Issue No. 6)**

Inasmuch as the opinions of Dr. Kikani suggest there may be significant non-exertional limitations which may preclude the utilization of the Grids, a vocational expert should be called. *Tackett v. Apfel*, 180 F.3d 1094, 1101-02 (9th Cir. 1999) (". . . [S]ignificant non-exertional impairments . . . may make reliance on the grids inappropriate.").

**ORDER**

---

[3] The Commissioner cites *Vincent*, 739 F.2d at 1395 and *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 n. 6 (9th Cir. 2005) as support for her harmless error argument. In both cases, the ALJ's failure to address lay witness testimony was not cause for a remand. However, in both cases, the issue was the establishment of a medically determinable impairment which requires "'medically acceptable . . . diagnostic techniques,'" *Vincent*, 739 F.2d at 1395, and lay witness testimony concerning symptoms would not affect the outcome. *Uknolov*, 420 F.3d at 1006, no.6; 20 C.F.R. §§ 416.908, 416.929(b).

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), it is ordered that judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

DATED:  December 14, 2006

/ S / FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge